Filed 12/22/20  P. v. Te'o CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MANU UIVA TE'O,<br><br>        Defendant and Appellant. | A157530<br><br>(San Mateo County<br>Super. Ct. No. 17NF015330A) |

Defendant Manu Uiva Te'o was involved in two violent assaults, one in which he assaulted a police officer and resisted arrest, and one in which he assaulted two men.  Defendant moved to sever trial of the counts arising from the separate incidents.  After the trial court denied his motion, the case proceeded to a jury trial.  The jury found defendant guilty of eight charges and found true an allegation regarding personal infliction of great bodily injury.  Defendant appeals, asserting that the trial court abused its discretion and violated his due process right to a fair trial by denying his motion to sever.  We affirm.

1

# I. BACKGROUND

## A. *Procedural Background*

Defendant was charged in an 11-count information based on crimes from two incidents. For an incident on November 22, 2017, the information charged defendant with resisting an executive officer (count 1, Pen. Code[1], § 69); battery with injury on a peace officer (count two, § 243, subd. (c)(2)); misdemeanor public intoxication (count 3, § 647, subd. (f)); misdemeanor resisting a peace officer (counts 4 and 5, § 148, subd. (a)(1)); misdemeanor battery (count 10, § 242); and resisting a peace officer resulting in great bodily injury (count 11, § 148.10, subd. (a)). For an incident on January 7, 2018, the information charged defendant with assault by means likely to produce great bodily injury (counts 6 and 7, § 245, subd. (a)(4)), with an enhancement allegation for personal infliction of great bodily injury (§ 12022.7, subd. (a)[2]); battery with serious bodily injury (count 8, § 243,

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The information also alleged an enhancement under section 1203.075, subdivision (a) for counts 6 and 7, but the court instructed the jury only on the section 12022.7, subdivision (a) enhancement.

subd. (d)); misdemeanor vandalism of property (count 9, § 594, subd. (b)(2)(A)); and misdemeanor battery (count 10[3], § 242).

Defendant pled not guilty and denied the enhancement allegations. The trial court denied defendant's motion to sever the charges for the two incidents. It similarly denied his renewed motion for severance on the first day of trial, finding that, although the evidence regarding the incidents was not cross-admissible, defendant had not established prejudice and judicial economy was furthered by a joint trial. After trial, a jury found defendant guilty on counts 1, 3, 4, 5, 6, 7, 8, and 9, and not guilty on counts 2, 10, and 11; the jury found true the great bodily injury enhancement allegation on count 7 but not true on count 6. After his sentencing, defendant timely appealed.

## B. November 22, 2017 (Counts 1–5 and 11)

### 1. The Prosecution's Case

On November 22, 2017, Doris Lang returned to her home in Daly City and found her son, defendant, upset and drinking. After speaking with his girlfriend on the phone, defendant began angrily yelling from the garage. He walked to the backyard, and Lang asked him to come back inside. Defendant returned to the

---

[3] Count 10 alleged misdemeanor battery occurring on or about November 22, 2017, but named as victims both a police officer involved in the November 2017 incident and Reynalde Morales. As set forth in section III of this Background, *infra*, Morales was the mother of the two men involved in the January 2018 incident with defendant. At trial, the court instructed the jury on count 10 regarding Morales and the January 2018 incident only.

garage but then went into the backyard to smoke a cigarette. He yelled at Lang when she followed him. Neighbors overheard the two and said something. Angered, defendant jumped the backyard fence and confronted three men on the adjacent street. Lang and her mother defused the situation, but someone called the police.

In response to 911 calls, several police officers arrived at Lang's house at about 8:00 p.m. Defendant, who appeared intoxicated, yelled at them and threatened to fight them if they touched him. An officer urged him to go inside and sleep it off. Defendant refused and ran or walked into a nearby busy street, yelling at the officers. He then returned to the garage and shut the door. An officer testified that he heard yelling from within the garage, defendant came out of the garage and yelled once more, and then he went back inside. Another officer testified that defendant continually opened the garage door and stepped in and out of the garage.

At some point, defendant opened the garage door and said something like, "I might as well go with you." Sergeant Scott Bowman told him he was under arrest. Bowman had decided to arrest defendant based on information gathered from witnesses while defendant was in the garage, as well as defendant's intoxication, belligerence, and threats against the officers. Defendant moved back as Bowman stepped toward him. The sergeant grabbed defendant's sweatshirt to prevent him from going back into the garage. Defendant swung his right arm down and hit Bowman's hand, fracturing one of the sergeant's fingers.

4

Wanting defendant in custody as quickly as possible, Bowman struck him in the face with his palm. Defendant fell to the ground and clenched a fist under his chest while lying on his stomach. He ignored orders to put his hands behind his back, and Bowman warned him that he would be tasered if he did not comply. Bowman then tasered defendant and took him into custody. Several officers aided Bowman in detaining defendant.

According to Lang, she stayed inside the garage with defendant for about 20 minutes after police arrived, and defendant did not leave the garage; during this time, defendant expressed his fear that the officers would take him away, but he was also angry because they were there. She testified that several officers ran into the garage when defendant opened the door and took him to the ground. One of the officers punched defendant six or seven times. One police officer testified that he observed another officer engage in distraction punches to defendant's leg.

## 2. Defendant's Case

Defendant drank a pint of vodka from about 4 p.m. to 6 p.m. after arguing with his girlfriend. At some point thereafter, his girlfriend called again, three neighbors overheard his conversation with her, and they began mocking defendant while he was in his backyard. Defendant became upset and exchanged words with the men. Believing he was being "taunt[ed]" and "called [] out," he jumped the fence and challenged one of them to a fight. The confrontation ended when his mother and grandmother intervened.

5

Defendant saw police officers when he returned to the front of his home. He cursed and warned them, "If you touch me, it will get worse." He was angry and wanted them to leave. Defendant went inside his garage, and at some point, he or his mother closed the door. He then looked through the mail slot in the garage door and saw the officers. He opened the garage door to go out and smoke a cigarette. However, he immediately closed it and remained inside when he saw that the officers were still there. He was no longer yelling, but he was irritated by the officers' continued presence.

At one point, he said to the officers, "I guess you want me to go to you because you're still here." After defendant said this and opened the garage door, an officer stepped inside the garage and tried to grab him by the arm. Defendant stepped back while the officer pulled at his sweatshirt. Defendant fell to the ground and several officers set upon him. Officers kneed and punched him and told him to give up his left hand which was underneath his body. Defendant was unable to comply because officers were on his back and shoulders. He was tasered and handcuffed.

A neighbor and defendant's brother-in-law witnessed defendant's arrest. They saw four to seven officers on top of defendant in the garage. One of the officers repeatedly punched defendant, and the neighbor yelled at that officer to stop.

### C. January 7, 2018 (Counts 6–10)

#### 1. The Prosecution's Case

After spending the evening drinking, Andres Morales, Sergio Morales, and a friend, Jonathan Vasquez, woke up on

6

January 7, 2018 at the Morales brothers' home and started drinking again.  Between 11:00 a.m. and noon, they went to buy beer at a nearby convenience store.

At the store, Jonathan got into an argument with a homeless man.  Defendant confronted Jonathan.  Andres and Sergio got caught up in Jonathan's argument with defendant.  At one point, the three men stepped into the street, acting as if they wanted to fight defendant.  Andres testified that they did this to scare defendant away.  Defendant, in turn, reached for his waistband, causing the men to believe he had a weapon.  Andres, Sergio, and Jonathan backed away and headed for the Morales home.  Defendant followed.

During the walk home, Jonathan and Sergio confronted an unidentified man on the street.  Andres urged Sergio to continue home.  About a half block from the Morales home, Sergio noticed defendant approaching quickly from behind.  He called out to Andres, put his bike down and lifted his hands, and defendant punched him in the face.  When Andres heard his brother scream, he turned and saw defendant punch Sergio in the face.  Andres walked towards defendant to aid his brother, and the next thing he remembered was waking up in an ambulance.

On the afternoon of January 7, 2018, from a house on the street down which the Morales brothers and Jonathan walked to go home, Randy Tziu heard yelling, looked out of an upstairs window of his uncle's house, and saw a man wearing a golf hat pummeling two other men near the stairwell of the house.  The attacker threw one or two punches that knocked unconscious a

victim who looked like he had been trying to defend himself, and he punched the other victim in the face more than once, including after that person was on the ground. Tziu went to get his phone to call the police, and when he returned to the window, he saw the two victims walking away arm-in-arm.

Reynalde Morales went outside to wait for her sons when they did not return home from the convenience store as expected. She went outside to wait, and, when she walked a bit off her property, she saw the three men walking towards her. One of her sons was bloody and a man with a cap was jogging toward them, yelling. When the man reached Jonathan, he knocked Jonathan to the ground. Morales shepherded the young men inside the house and stepped between them and the man. The man pushed her aside, injuring one of her fingers. She went inside and called the police. According to Reynalde Morales, the man remained outside her home, yelling and kicking the front gate until the police arrived. About a month later, a doctor diagnosed Reynalde Morales with a finger fracture.

When the police arrived at the Morales home on January 7, 2018, defendant was kicking the front gate and shouting. The door handle and a wooden plank from the gate were damaged. When police arrested defendant, he was wearing a golf hat. Andres was treated for a broken nose and a cut to his right eyebrow, and Sergio suffered a bump over his left eyebrow and a bloody nose.

## 2. Defendant's Case

Defendant was outside of a convenience store drinking when he heard yelling. He investigated and saw Sergio yelling at a man in a red jacket. Defendant told him to leave the man alone, and Sergio pumped his hand and called defendant a "bitch-ass nigger." Defendant backed away when he saw Andres and Jonathan, and he tried to scare the men by pretending to have a weapon. The three men eventually left.

The man in the red jacket followed Andres, Sergio, and Jonathan when they left, and defendant caught up with the man in the red jacket. Sergio then confronted a different man in a red hat. After that confrontation ended, defendant asked the man in the red hat what had happened. He then followed when the man in the red hat followed the three young men.

At some point thereafter, Sergio and defendant approached each other. Sergio came at defendant with raised fists and threw a punch at defendant. The two exchanged blows and Sergio fell to the ground. Andres and defendant then approached one another, with Andres swinging his fists. Defendant struck Andres several times. Defendant could not recall having any contact with Reynalde Morales, but he admitted kicking the Moraleses' front gate.

## II.    DISCUSSION

Section 954 provides in relevant part: "An accusatory pleading may charge two or more different offenses connected together in their commission . . . or two or more different offenses of the same class of crimes or offenses . . . provided, that the court

9

in which a case is triable, in the interests of justice and for good cause shown, may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately or divided into two or more groups and each of said groups tried separately."

Where, as here, there is no dispute that the charges were properly joined pursuant to section 954, we review the denial of a motion for severance for abuse of discretion.  (*People v. Smith* (2007) 40 Cal.4th 483, 510.)  A trial court's denial of a motion for severance amounts to a prejudicial abuse of discretion where the denial " ' " ' "falls outside the bounds of reason." ' " ' "  (*Alcala v. Superior Court* (2008) 43 Cal.4th 1205, 1220.)  Since the requirements for joinder were satisfied, defendant can predicate error only on a clear showing of potential prejudice.  (*People v. Soper* (2009) 45 Cal.4th 759, 774 (*Soper*).)  To make such a showing, he must show "an 'extreme disparity' in the strength or inflammatory character of the evidence."  (*People v. Ybarra* (2016) 245 Cal.App.4th 1420, 1436.)

"In determining whether a trial court abused its discretion under section 954 in declining to sever properly joined charges," we consider the record before the trial court when the motion was made and first "consider the cross-admissibility of the evidence in hypothetical separate trials." (*Soper*, *supra*, 45 Cal.4th at p. 774.) "If the evidence underlying the charges in question would be cross-admissible, that factor alone is normally sufficient to dispel any suggestion of prejudice and to justify a trial court's refusal to sever properly joined charges." (*Id.* at pp. 774–775.)  Lack of

10

cross-admissibility itself, however, will not establish prejudice or an abuse of discretion by the trial court in denying severance. (§ 954.1; *Soper*, at p. 775.)

When evidence for the separate charges is not cross-admissible, courts next consider " 'whether the benefits of joinder were sufficiently substantial to outweigh the possible "spill-over" effect of the "other-crimes" evidence on the jury in its consideration of the evidence of defendant's guilt of each set of offenses.' " (*Soper*, *supra*, 45 Cal.4th at p. 775.) "In making that assessment, we consider three additional factors, any of which—combined with our earlier determination of absence of cross-admissibility—might establish an abuse of the trial court's discretion: (1) whether some of the charges are particularly likely to inflame the jury against the defendant; (2) whether a weak case has been joined with a strong case or another weak case so that the totality of the evidence may alter the outcome as to some or all of the charges; or (3) whether one of the charges (but not another) is a capital offense, or the joinder of the charges converts the matter into a capital case. [Citations.] We then balance the potential for prejudice to the defendant from a joint trial against the countervailing benefits to the state." (*Ibid.*, italics and fn. omitted.)

Here, the evidence of the two incidents was concededly not cross-admissible. However, defendant does not establish the strong showing of potential prejudice required to defeat proper joinder and to outweigh the benefits of such joinder.

11

Defendant contends that the November 2017 charges involving police were unduly inflammatory because police hold a special place in society. But the November 2017 incident was no more inflammatory than the January 2018 incident. Both incidents involved defendant's aggressive acts, and his acts during the November 2017 incident were less violent than those in the January 2018 incident where he rendered at least one victim unconscious, sent another to the hospital, and angrily caused damage to the family's home. Defendant's January 2018 assault was also targeted as he followed his victims and hit at least one victim unprovoked. In contrast, in November 2017, defendant swung his arms to dislodge an officer's grip after the officer grabbed defendant's sweatshirt. In sum, the facts of the November 2017 incident were not reasonably likely to so inflame jurors that they would have convicted defendant of the charges for the January 2018 incident without independently finding guilt beyond a reasonable doubt.

We also reject defendant's assertion that the case for the November 2017 incident was strong whereas the case for the January 2018 incident was weak. Several witnesses were involved in each incident, including a third party eyewitness to the January 2018 incident, the number of charges was about the same for each, and the jury ultimately acquitted defendant of charges related to each incident. Defendant argues that he had no defense to the November 2017 incident, in contrast to his allegedly strong claim of self-defense for the January 2018 incident, but the evidence before the court when it decided the

motion to sever provided cause to doubt the strength of his self-defense claim.  In opposing the motion to sever, the prosecution represented that defendant followed the victims in January 2018, hitting one unprovoked, and a witness saw defendant continually hitting two unmoving victims.  The prosecution also stated that the evidence would show that defendant shoved the victims' mother, injuring her finger, after she merely placed herself in between defendant and her sons.  And the trial testimony was consistent with the prosecution's representations.  Because the record does not support defendant's claim that the prosecution bolstered a weak case with a strong one, denial of defendant's motion to sever did not " ' " ' "fall[ ] outside the bounds of reason." ' " ' " (*Alcala*, *supra*, 43 Cal.4th at p. 1220.)

Defendant's due process claim also lacks merit.  " '[E]ven if a trial court's ruling on a motion to sever is correct at the time it was made, a reviewing court still must determine whether, in the end, the joinder of counts . . . for trial resulted in gross unfairness depriving the defendant of due process of law.' " (*Soper*, *supra*, 45 Cal.4th at p. 783.)  Defendant's argument regarding "gross unfairness" consists of a single paragraph.  Therein, he merely reiterates arguments that we have rejected—that the charges for the November 2017 incident were unduly inflammatory and one case was strong and the other weak—and he concludes without reasoned argument that joinder precluded fair consideration of his self-defense claim.  Defendant has not satisfied his "high burden" of showing " 'gross unfairness.' " (*Ibid*.)  The jury's verdict acquitting defendant of charges related to both incidents

13

and rejecting a great bodily injury enhancement for the January 2018 incident further demonstrates that it was able to separate and fairly evaluate the evidence of both incidents, thus showing that joinder was not "grossly unfair." (*Id.* at p. 783; *People v. Ybarra, supra*, 245 Cal.App.4th at p. 1440 [verdict of acquittal on charges from one incident tended to show jury considered evidence separately and defendant was not prejudiced by evidence related to charges from a separate, joined incident].)

## III.   DISPOSITION

The judgment is affirmed.


BROWN, J.


WE CONCUR:

STREETER, ACTING P. J.

TUCHER, J.